# NINE JUSTICE COURT

CITY OF SAN ANGELO V. BOEHME BAKERY ET AL.

No. A-520. Decided October 17, 1945.
Rehearing overruled November 21, 1945.
(190 S. W., 2d Series, 67.)

*Olin Banks*, of San Angelo, for petitioner.

It was error for the Court of Civil Appeals to hold that the Board of Adjustment abused its discretion in refusing to grant such permit and in instructing the trial court to grant the relief prayed for. Railroad Commission v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022; Gragg v. Hill, 58 S. W. (2d) 150; Blair v. Board of Trustees Trinity Ind. Sch. Dist., 161 S. W. (2d) 1030.

*Kerr & Gay*, of San Angelo, for respondents.

The trial court having found that the evidence was in favor of granting the permit; that the district court had the authority to pass upon the facts as presented; that the evidence showed that the board acted arbitrarily; that no property owners protested against the permit, and that the bakery had been in existence at that location for more than twenty years and was not trying to extend its business, but merely erecting a garage to house its trucks and serve as a loading zone, was ,as a matter of right, entitled to the permit. City of Gilmer v. Moyer, 181 S. W. (2d) 1008; Meserole v. Board of Adjustment 172 S. W. (2d) 529; Washington v. City of Dallas, 159 S. W. (2d) 579.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

In 1940 the City of San Angelo enacted a comprehensive zoning ordinance under the provisions of an act of the 40th Legislature, ch. 283, being Articles 1011a to 1011j, inclusive, of Vernon's Statutes. For many years prior thereto a bakery known as Boehme Bakery, owned by Mrs. Mary L. Boehme and others, had been in operation in the city. When the boundaries of the zones were established this bakery fell within a residential zone and therefore became a nonconforming use. The owners of the bakery filed an application with the city engineer for a permit to construct a garage 45 feet by 62 feet adjoining the bakery to the rear and opening upon an alley, and also a boiler room and tool shed 40 feet by 20 feet adjoining the bakery on another side, both additions being on property owned by Mrs. Boehme. Their application was denied by the city engineer and on appeal to the board of adjustment the order was affirmed. Thereafter this suit was timely filed under the provisions of Article 1011g to review the decision of the board. In the trial court relief was denied, but on appeal the Court of Civil Appeals reversed the trial court's judgment and remanded the cause to that court with instructions that it grant "appropriate relief." 185 S. W. (2d) 601.

Mrs. Boehme and others filed this suit in the district court challenging the legality of the order of the board of adjustment on the ground, among others, that the board abused its discretion in denying their application. The members of the board answered, assigning their reasons for refusing the permit. The minutes of the board, made a part of the return, disclose that the permit was denied "based upon the objection by the property owners who will be affected by extension of her business." The return recited:

"That in addition to the grounds set forth in the minutes above mentioned the plaintiffs' application was denied for the following additional reasons:

"1. That plaintiffs by their application sought to extend their bakery into an 'A,' or dwelling, district contrary to the provisions of section 3 of the above mentioned zoning ordinance and under the terms of said ordinance and the laws of the State of Texas the Board had no authority to grant their application.

"2. That the portion of the City of San Angelo where plaintiffs' bakery is located is predominantly residential and that any extension of plaintiffs' bakery which is a nonconforming use would adversely affect the value of such properties and render them less desirable for residential purposes.

"3. That the garage building and other addition which plaintiffs seek permission to erect are not essential to the maintenance of their business."

The trial court heard evidence and, at the request of respondents, filed findings of fact and conclusions of law. One such finding was as follows:

"That upon a hearing in this Court the evidence was overwhelmingly in favor of the granting of the permit and if the Court had felt that the matter was discretionary with him he would have granted the permit except for the conclusions of law."

Upon the request of the city additional findings of fact were filed, among them being the following:

"3. I find as a fact that the evidence in this case does not show that the defendant Board of Adjustment of the City of San Angelo acted arbitrarily, fraudulently or capriciously in denying plaintiffs' application for a permit to erect the proposed additions to their bakery."

The conclusions of law were:

"I conclude that the City Zoning Adjustment Board had legal authority to grant the permit and application filed by the plaintiffs but conclude that this court has no authority to disturb the findings of that administrative body on the record as made in this case, and therefore I affirm the decision of the zoning adjustment board and deny plaintiffs any relief."

Of these findings and conclusions the trial court affirmed the order of the board.

The Court of Civil Appeals concurred in the holding of the trial court that the board of adjustment was not lacking in authority to grant the permit, had the facts justified it, but, on a ground to be stated below, reversed the case and remanded it to the trial court with instructions.

We agree with the holding that the board of adjustment possessed the power to grant the permit. The opinion of the Court of Civil Appeals on this question meets with our approval and, since it has been published, further discussion of the question would serve no purpose. But we are not in accord with the holding of that court on the question made the basis of its judgment of reversal. It likened the procedure to an appeal from an

order of the Railroad Commission granting or refusing a permit to drill an oil well, and the conclusion was drawn that the finding by the trial court that the evidence was overwhelmingly in favor of the granting of the permit was tantamount to a finding that the board had abused its discretion in refusing the permit. We are not in accord with this reasoning.

■ This proceeding is not strictly analogous to a proceeding before the Railroad Commission. It is a certiorari proceeding governed by the provisions of the statute on zoning above cited. The legality of that statute is not questioned. It is therefore the function of the court to construe its provisions and from such construction determine the scope of judicial review thereunder.

■ In 1926 the Federal Department of Commerce released a revised edition of a standard state zoning law written by an advisory committee and sponosored by the Department. Metzenbaum, The Law of Zoning, pp. 303 et seq. That law has been adopted, either literally or in its major parts, by most of the states, including our own. Vernon's Statutes, Article 1011a to 1011j, inclusive. In so far as material to the questions to be decided in this opinion our act is a verbatim copy of the standard act, which has been construed in many jurisdictions. The proceeding set up for review by the court of an order of the board of adjustment is a certiorari, but the powers granted to the court by the law are broader than those obtaining under the common law certiorari. The office of a certiorari at common law was to enable a superior court to demand of an inferior court or body that it send up the record of the proceedings in the matter under review in order that the legality thereof might be tested to determine whether the lower court or body had acted within its proper jurisdiction. The inquiry by the court was comparable to that in an original habeas corpus proceeding in this court. The only judgment that could be rendered in a common law certiorari was one quashing the writ or quashing the record of the proceedings. Schwind v. Goodman. (Com. App.) 221 S. W. 579; O'Connor v. Overall Laundry, 98 Ind. App. 29, 183 N. E. 134; 10 Am. Jur., Certiorari, Sec. 2.

The procedure under our statute is prescribed in Art. 1011g and may be briefly summarized as follows: The court in which the proceeding may be instituted is not named further than as a "court of record." Since jurisdiction is not conferred upon any particular court, it follows that under the provisions of Art. 1909, R. S. 1925, the district court is the proper tribunal in which to institute the proceeding. By providing that the pro-

ceeding shall have preference over "all other civil actions" it is impliedly classed as a civil suit. It may be instituted, not only by the party or parties whose application was denied by the board of adjustment, but by, among others, "any taxpayer." The petition must be verified and must specify the grounds upon which it is claimed that the decision of the board is illegal. The only question which may be raised by the petition is that of the legality of the board's order. The court may allow a writ of certiorari to be directed to the board and shall prescribe the time within which a return thereto must be made. In obedience to the writ the board may return the original papers acted upon by it or certified or sworn copies thereof or such portions thereof as may be called for by the writ. The board shall concisely set forth in its return such other facts as may be pertinent and material to show the grounds of its decision. The act then provides that:

"If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

One view of the effect of the provisions of the statute just quoted is that the only purpose to be served by such evidence is to fill in gaps in jurisdictional facts in the return of the board of adjustment. Bassett on Zoning, 1940 Edition, p. 158. We think that provision should not be so narrowly construed. It expressly provides that the evidence offered upon the hearing shall constitute "a part of the proceedings upon which the determination of the court shall be made," and that "the court may reverse or affirm, wholly or partly, or may modify the decision brought up for review." These provisions, to our minds, negative the conclusion that the only question for decision in the hearing before the court is one of the board's jurisdiction. But the evidence taken at the hearing is not to form the sole basis of the court's judgment. By requiring that the return of the board "shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified," the statute contemplates that the trial court, in passing on the legality of the order of the board, shall consider its verified return along with the evidence introduced, and from a consideration of the whole determine whether or not the board abused its discretion. The court is not to put itself

in the position of the board and substitute its discretion for that of the board. In giving the power to take evidence it was clearly not intended to authorize the court to exercise that power just as if it were the board itself. Appeal of Brosnan, 129 Pa. Sup. 411, 195 Atl. 469; People v. Connell, 257 N. Y. 73, 177 N. E. 313.

■ In the light of the foregoing the findings of the trial court are in no sense conflicting. The court did find that the overwhelming preponderance of the evidence heard by it was in favor of the granting of the application. The question of where is the overwhelming preponderance of the evidence is a question of fact. Hall Music Co. v. Robinson, 117 Texas 261, 1 S. W. (2d) 857. But the court found, as a matter of law, that it had no authority to disturb the findings of the board "on the record as made in this case." It further found, in effect, that the board did not abuse its discretion. Whether or not the board abused its discretion is a question of law. City of University Park v. Hoblitzelle, 150 S. W. (2d) 169; Macauley v. Query, 193 S. C. 1, 7 S. E. (2d) 519; Burger v. Township of Freedom, 126 Pa. Sup. 128, 190 Atl. 387. Considering these findings and conclusions together, we think they add up to this: The trial judge, had he been the board, would have granted the application, but, viewing the whole record, including the evidence heard and the verified return of the board, it could not be held that the board had abused its discretion.

The record justifies the court in that conclusion. The point should not be overlooked that the respondents were seeking a permit to extend a nonconforming use contrary to the general terms of the ordinance. To establish the illegality of the board's order denying them such permit would require a very clear showing of abuse of discretion, and this record does not meet that test.

It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered October 17, 1945.

Rehearing overruled November 21, 1945.