BOARD OF ADJUSTMENT OF the CITY
OF CORPUS CHRISTI, Texas,
Appellant,

v.

Kenneth WHITLOCK et al., Appellees.

No. 484.

Court of Civil Appeals of Texas.
Corpus Christi.
May 22, 1969.

Rehearing Denied June 12, 1969.

I. M. Singer, City Atty., Thomas D. McDowell, Asst. City Atty., Corpus Christi, for appellant.

Edwards, DeAnda & Arnett, Lee Arnett, Corpus Christi, amicus curiae.

Sorrell, Anderson & Porter, Charles R. Porter, Jr., Corpus Christi, for appellees.

OPINION

GREEN, Chief Justice.

This appeal is from a judgment of the 117th District Court of Nueces County, Texas, reversing an order of appellant Board of Adjustment of the City of Corpus Christi hereafter called the Board or appellant.

In the Fall of 1967, Hurricane Buelah irreparably damaged the transmitting towers of K.C.C.T. Radio Corporation and it became necessary that it secure another location. The Federal Communications Commission had given a temporary permit to operate with the one remaining tower until another location complying with F.C.C. regulations had been secured. K.C.C.T. filed an application with the appropriate official of the City of Corpus Christi for a permit to erect its towers and plant at 633 Weil Road within the City, but the permit was denied on the ground that the towers are not permitted to be located in a one-family dwelling district under the provisions of the Zoning Ordinance.

K.C.C.T., acting under the authority of Art. 1011g, Vernon's Ann.Tex.St. appealed

from such denial to the Board of Adjustment, seeking a Special Use Exception to construct the radio transmitting towers and transmitting structure building on an 8-acre piece of land at the above address in the city zoned for single family residences under the provisions of Article 29–3 of the City's Code of Ordinances. Such article permits a special use exception to be granted for the construction of radio or television broadcasting tower and station if the Board finds that such exception " * * *will not substantially affect adversely the uses of adjacent and neighboring property permitted by this Ordinance." After a hearing in which the appellees, being representatives of and members of a class of people residing on property adjacent to and in the neighborhood of 633 Weil Road, participated, the Board impliedly made the above finding, and granted the special use exception. The City some time thereafter granted a building permit for the construction of the towers and building.

Appellees timely filed for a Writ of Certiorari to the 117th District Court of Nueces County, in which only the Board was named as a defendant. The writ was granted by the district court, and the Board duly made its return to the court. After a trial without a jury, the court found that the construction of the radio transmitting station and towers on the designated property would substantially affect adversely the uses of adjacent and neighboring property, and concluded that the decision of the Board was not supported by substantial evidence. Judgment was entered reversing the decision of the Board and nullifying the building permit. The Board has appealed from such judgment.

Appellant's first two points of error relate to procedural matters which we do not deem necessary to decide. The appeal will be determined on our disposition of points three and four.

Appellant's points of error number three and number four read as follows:

## "POINT NUMBER THREE

"The trial court erred in reversing the decision of the Board of Adjustment where such decision was based on substantial evidence and the material issues of fact were disputed as found by the court in *Finding of Fact No. 6*.

## "POINT NUMBER FOUR

"The trial court erred in substituting its decision for that of the Board where the evidence before the court, viewed as a whole, is such that reasonable minds could have reached the same conclusion as that of the Board."

Appellees' Reply Point No. IV, in reply to appellant's third and fourth points, reads:

"The decision of the trial court should be affirmed because it properly exercised its discretion in reversing the Board of Adjustment."

The appeal by way of writ of certiorari from the Board to the district court is authorized by Article 1011g. This is one of a series of articles permitting cities to establish comprehensive zoning ordinances (Arts. 1011a–j). Article 1011g permits the establishment of Boards of Adjustment and defines the powers of such a board, and provides the manner of appealing from a decision of the Board in writ of certiorari. Board of Adjustment of City of Fort Worth v. Stovall, 147 Tex. 366, 216 S.W.2d 171.

Under Art. 1011g, any taxpayer aggrieved by the decision of the Board of Adjustment may present a verified petition to a district court setting forth that such decision is illegal, in whole or in part, and specifying the grounds of the illegality. Upon presentation of such petition the court may allow a writ of certiorari directed to the Board to review the decision. The return of the Board consists of the original or sworn copies of the papers acted upon by the Board and called for by the writ, and shall concisely set forth such other facts as may be pertinent and ma-

terial to show the grounds of the decision. Upon the hearing of the writ, the court may take evidence if it shall appear that testimony is necessary for the proper disposition of the cause.

Probably the leading case on the subject in Texas is City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67. In construing Art. 1011g, the Supreme Court held in regard to the authority of the district court in passing upon an order of the Board of Adjustment in this nature of suit:

1. The court may take evidence when necessary to proper disposition of the matter, but in being given this power to take evidence the court was not intended to exercise that power as though it was the Board itself;

2. The court is not to put itself in the position of the Board and substitute its discretion for that of the Board;

3. The only question which may be raised by the petition is that of the legality of the Board's order;

4. In passing on the legality of the Board's order, the trial court shall consider the return of the Board along with the evidence introduced, and from a consideration of the whole determine whether or not the Board abused its discretion;

5. Abuse of discretion is a question of law, not of fact;

6. A finding by the trial court that the evidence was overwhelmingly against the decision of the Board is a finding of fact, and is not equivalent to a finding that the Board abused its discretion, and is not controlling of the disposition of the case.

 The order of the Board of Adjustment is accorded a presumption of validity, and the burden is on the one attacking such order to prove it invalid or illegal. City of Dallas v. Fifley, Tex.Civ.App., 359 S.W.2d 177, wr.ref. n. r. e.; Zoning Board of Adjustment of the City of San Antonio v. Marshall, Tex.Civ.App., 387 S.W.2d 714, wr.ref. n. r. e.; Montgomery

v. City of Dallas, Tex.Civ.App., 245 S.W.2d 753, wr.ref. n. r. e.

The Supreme Court in *Boehme Bakery,* supra, stated that the test to be applied in determining the validity of the Board's order is whether or not the Board abused its discretion in making the order. A number of Texas Civil Appeals decisions have applied the *substantial evidence rule,* holding that in reviewing a decision of the Board of Adjustment the trial court shall determine whether in considering the case as a whole there is substantial evidence to support the Board's order. Davis v. Zoning Board of Adjustment of City of Lubbock, Tex.Civ.App., 362 S.W.2d 894, wr.ref. n. r. e.; Zoning Board of Adjustment of the City of San Antonio v. Marshall, supra; City of Dallas v. Fifley, supra. We fail to see any conflict between the test applied in *Boehme Bakery,* and the substantial evidence rule as stated in the decisions of the Courts of Civil Appeals. Neill v. Cook, Tex.Civ.App., 365 S.W.2d 824, 831, wr.ref. n. r. e.

 Under the substantial evidence rule, the court examines and takes into consideration the entire record, and is to sustain the agency if its decision is reasonably supported by substantial evidence. If the record as a whole is such that reasonable minds could *not* have reached the conclusion that the Board must have reached in order to justify its action, the order is invalid and must be set aside. Hawkins v. Texas Co., 146 Tex. 511, 209 S.W.2d 338; Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424; Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; City of San Antonio v. Texas Water Commission, Tex.Sup.Ct., 407 S.W.2d 752, 758. The sole question before the district court was the legality of the decision of the Board. *Boehme Bakery,* supra. The Board was authorized to grant the special use exception if there was substantial evidence to support its finding that the structures would not *substantially* affect adversely the uses of adjacent and neighboring property. If such finding of the Board

was not supported under the *substantial evidence rule,* the order was illegal, and the Board abused its discretion, and the trial court acted properly in reversing its order.

J. H. Mayberry, an F.C.C. licensed Radio Engineer, testified before the Board that in his opinion there would not be any T.V. or radio interference from the towers to be constructed; that he was familiar with the amount of territory the output signal would cover and with the frequency generated by the towers, and that the towers' frequency would not interfere with any T.V. and radio reception because the main signal would be directed towards Kingsville, but that there might be a little interference with cheap transistor radios and other low priced radios. He stated that the frequency might interfere with telephone conversations in some instances. He testified that if any interference was caused by K.C.C.T., the station would take care of and correct such interference.

Appellees placed in evidence letters from two engineers, Professor Ronald Williams and Mr. Harold Griffith, both experienced in electronics and radio broadcasting, whose statements were to the effect that the operation of the broadcasting station at the proposed location would cause some interference to radio and T.V. reception in the immediate neighborhood, as well as to tape recorders and phonographs, and recommended against granting the appeal of K.C.C.T.

Based on the record before it the Board granted the special use exception.

At the trial in the district court, Professor Williams, whose letter had been before the Board, testified for appellees that the location of the broadcasting station at the proposed site would probably cause considerable interference within the concerned area with radios, televisions, and other home electronic equipment; that location of transmitting antennas to serve urban areas was a difficult problem, because the towers needed to be placed close to the urban areas, but that by placing them too

close interference would result. He demonstrated the interference by playing a tape recording that he had made of cross-modulation interference with station K.R.Y.S. in the blanket area of K.U.N.O., two stations located in the Corpus Christi area.

There was testimony by other witnesses for appellees of interference with a church public address system by another radio station, but they did not know the cause of the interference, and had made no complaint to the station or employed any technician to remedy the situation.

A real estate agent testified that the location of the broadcasting station at the proposed site and resulting interference with electric home devices would decrease the value of neighboring real estate. On cross-examination he stated that he had not employed any standard of appraisal technique in reaching his conclusions.

J. H. Mayberry, who was the K.C.C.T. expert witness before the Board, testified at some length for appellant in the court trial. He repeated in more detail what he had said before the Board. He added that the interference heard on William's tape was caused by "image frequency" from the interfering radio station, which would not be a problem with K.C.C.T. because its "image frequency" fell outside the broadcast band; that the interference with the church public address system would cost twenty cents to remedy; that radio stations frequently had to eliminate interference, which they always did because it was not a big problem anyway; and that the F.C.C. required all radio stations to correct all legitimate complaints of interference, and that the radio station goes to the home and corrects the complaint and that all complaints can be corrected. Evidence was given of other businesses in the area.

■ There was other evidence in the record bearing on the issue of whether or not the installation of the radio station at the proposed site would substantially affect adversely the uses of adjacent and

neighboring property. The trial court found as a fact that this was a disputed issue. It is doubtless true that the preponderance of the evidence before the court supported the court's finding that such adjacent and neighboring property would be adversely affected. This was a finding of fact and not the decisive issue in the case. *Boehme Bakery,* supra. The issue before the trial court was a question of law as to whether there was substantial evidence on the entire record to support the Board's conclusion, or, in other words, whether or not the decision of the Board was illegal. We are of the opinion, and we hold, that the record as a whole is such that reasonable minds could have reached the same conclusion that the Board did reach, and that the Board's order was not shown to be illegal. There was no showing that the Board abused its discretion in rendering the order favorable to the petition of K.C.C.T.

The judgment of the trial court is reversed, and judgment is rendered that appellees take nothing by virtue of their appeal to the district court by way of certiorari from the order of the Board of Adjustment.