Terrence W. McDONALD and King William Association, Appellants,

v.

BOARD OF ADJUSTMENT, CITY OF SAN ANTONIO, et al., Appellees.

No. 15850.

Court of Civil Appeals of Texas, San Antonio.

Dec. 21, 1977.

Rehearing Denied Jan. 18, 1978.

Theodore M. Bailey, Michael H. Casey, San Antonio, for appellant.

Jay Sam Levey, Levey & Goldstein, San Antonio, for appellees.

MURRAY, Justice.

The appellants, Terrence W. McDonald and King William Association, brought this suit in the nature of a writ of certiorari under the provisions of Art. 1011g, Tex.Rev. Civ.Stat.Ann. (Supp.1977) against the City of San Antonio and the Board of Adjustment of the City of San Antonio, challenging the legality of the decision of the Board of Adjustment of the City of San Antonio in granting the right to nonconforming use of Lot 4, Block 4, NCB741, City of San Antonio, County of Bexar, Texas for warehousing use only.

Mrs. Sally Flores applied for a permit to prove nonconforming rights for warehousing and manufacturing on said Lot 4 located at 212 Madison Street in a historic D apartment district. § 42–50 of the San Antonio, Texas Zoning Ordinance (1975)

does not allow this use in a historic D apartment district. The building in question is a hollowed out concrete and steel building built in 1935 as a warehouse addition to the Samuels Glass Company building located at 923 South Alamo Street in a J commercial district.

At the time the original Zoning Ordinance was adopted by the City of San Antonio on November 3, 1938, the building was used for fabricating mirrors and warehousing of rough glass. Since that time, with the exception of some short periods which will be discussed later, the building has been used at least in part as a warehouse. In 1963, the owner, Mr. J. H. West, sold the property to Mr. E. J. Hood. Mr. Hood intended to operate a metal fabricating plant but his plans were never consummated. In 1964 the property was sold to Mrs. Sally Flores and husband, who have used the property as a manufacturing plant and warehouse up until the hearing before the Board of Adjustment.

The trial in the district court was without jury, and the only evidence submitted was the verified record of the Board of Adjustment's proceedings consisting of the transcript, all papers on file, including stipulations and pertinent zoning ordinances. The court entered its judgment sustaining the action of the Board in granting nonconforming use for warehouse use only to the said Lot 4, and denying nonconforming use for manufacturing. No appeal was taken by the property owner from the order of the Board denying said manufacturing use.

Appellants' points of appeal can be narrowed to the following propositions broadly stated: 1. There was no evidence, or in the alternative, no substantial evidence, supporting the decision that there was a continued use of Lot 4 as a warehouse. 2. All nonconforming rights were terminated by the violation of the San Antonio Zoning Ordinance by failure to register a nonconforming use on Lot 4, as provided for in §§ 42–35 and 42–34(c)(3) of said Ordinance. 3. All nonconforming rights were terminated by the fact that a prior owner, E. J. Hood, discontinued all nonconforming uses

in general and the use as warehousing in particular. 4. All nonconforming rights were terminated by the use of Lot 4 for plastics manufacturing, which is heavier use than prior nonconforming use had established and which change violated § 42–34 of the Zoning Ordinance.

We are governed by certain established legal principles in an appeal from a decision of the Board of Adjustment, as set out in the following cases, and it would serve no purpose to reiterate those principles here except to say that a party seeking relief from a decision of the Board of Adjustment, relative to nonconforming use, has the burden of proof to establish illegality and if the evidence before the court as a whole is such that reasonable minds could have reached the conclusion that the Board must have reached in order to justify its action, then the order must be sustained. *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67 (1945); *Swain v. Board of Adjustment of City of University Park*, 433 S.W.2d 727 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.), *cert. denied,* 396 U.S. 277, 90 S.Ct. 563, 24 L.Ed.2d 465 (1970); *City of Dallas v. Fifley*, 359 S.W.2d 177 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *Montgomery v. City of Dallas*, 245 S.W.2d 753 (Tex.Civ.App.—Waco 1952, writ ref'd n. r. e.).

Prior to 1965 the Zoning Code of 1950, in § 64–6(a), provided as follows:

Nonconforming uses. The lawful use of land existing on November 3, 1938, although such use does not conform to the provisions of this chapter, may be continued, but if such nonconforming use is discontinued, any future use of such premises shall be in conformity with the provisions of this chapter.

*The lawful use of any building existing on November 3, 1938, may be continued, although such use may be extended throughout the building, provided no structural alterations, except those required by law or ordinances, are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to another nonconform-*

*ing use of the same or more restricted classification.*

The right of nonconforming uses to continue shall be subject to such regulations as to the maintenance of the premises and conditions of operation as may, in the judgment of the board of adjustment, be reasonably required for the protection of adjacent property.

§ 42–34 of the present City Code, which was enacted on June 28, 1965, provides as follows:

(b) To another nonconforming use. The following and no other, nonconforming uses may be changed to another nonconforming use as herein set forth, provided, however, that a nonconforming use changed to another nonconforming use as provided, shall not thereafter be changed back to the former nonconforming use:

City Code § 42–58(30) (1965), provides that in order to qualify as a proper "J" commercial use, if the use in question is not specifically listed in that section, the use must not be "obnoxious or offensive by reason of the emission of odor, dust, smoke, gas, noise or vibration."

The resolution of the Board is as follows: MOTION made by Mr. Keoughan and seconded by Mr. Foster that the applicant is before the Board to attempt to establish non-conforming rights for the manufacturing of glass and warehousing on Lots 4 and 5, NCB 9791. It should be noted that this property is zoned Historic "D" Apartment District. This member moved that the applicant has proven nonconforming rights on Lot 4 for the use of warehousing. This member moved that the applicant has failed to prove any nonconforming rights on Lot 5. The applicant has supplied sufficient facts to this Board to establish that from the date of the passing of the Zoning Ordinance, being November 3, 1938, the building was in existence at that time and has been since that time used for some form of warehousing. There has not been an abandonment or termination of warehousing aspect of this use since that date. The rights to manufacture products have been lost, due to the changing of uses, to a manufacturing use or fabricating use other than glass products. There has been some aspect of warehousing conducted continuously therein. The fact that the residence on Lot 5 was destroyed by fire after the passing of the ordinance terminated the non-conforming rights (assuming they ever existed). Sections 42–32 through 42–38 give the Board of Adjustment the authority to determine whether or not non-conforming rights exist on a specific piece of property and in summation, this member moved that the applicant has proven non-conforming rights to use Lot 4 for warehousing purposes.

ADDENDUM TO MOTION made by Mr. Keoughan and seconded by Mr. Foster that there is in some respect the fabrication of plastics; therefore, this member moved that the applicant be given a six month period in which to cease and desist this use.

The present City Code § 42–37(b), provides that:

The violation of this chapter shall terminate immediately the right to operate a nonconforming use.

Appellants contend that the Board's denial of manufacturing implies a finding that there had been a violation of the nonconforming use and, therefore, under City Code § 42–37(b) all nonconforming rights terminated immediately. Appellees contend that the granting of nonconforming use of warehousing by the Board implies a finding of no violation and the Board was in error in denying manufacturing, but they do not care to use the building for manufacturing and have not appealed such ruling.

It is undisputed that prior to the building being used for plastics manufacturing in 1963 it was being used for warehousing, which was permitted in a "J" commercial district. Plastics manufacturing is permitted in a "J" commercial district if the use is not "obnoxious or offensive by reason of the emission of odor, dust, smoke, gas, noise or vibrations."

There is no evidence in the minutes of the Board of the emissions of odor, etc. There

is mention by three people of odor in the return of notices mailed to surrounding property owners; however, only the results of these notices were received by the Board. We hold that appellants have failed to show that the odor was illegal because of violation of the nonconforming use as a plastics manufacturer.

 Appellants complain of the action of the Board in failing to eliminate all nonconforming use of property because of the action of E. J. Hood. Appellants urge abandonment of any nonconforming use as a matter of law because during the few months that Mr. Hood owned the property the property was vacant and the nonconforming use was discontinued. We agree with the statement found in 62 C.J.S. *Municipal Corporations* § 226 at 502 (1949).

The word 'discontinued,' as used in a zoning ordinance provision that, if a nonconforming use is discontinued, any new use of the premises shall be in conformity with provisions of the ordinance, connotes a voluntary act and is synonymous with 'abandoned,' and the discontinuance of a nonconforming use results from the concurrence of the intent to abandon and some overt act or failure to act which carries the implication of abandonment.

The unsuccessful attempt of Mr. Hood to establish a metal manufacturing plant is in no sense conclusive of abandonment and in fact shows an intention not to abandon. *Town of Highland Park v. Marshall,* 235 S.W.2d 658 (Tex.Civ.App.—Dallas 1950, writ ref'd n. r. e.) We hold that the evidence before the Board was such that reasonable minds could reach the conclusion that there had been no abandonment of the nonconforming use.

 Appellants urge that the trial court erred by not finding that the decision of the Board was illegal because the Board cannot waive the failure to register the nonconforming use before the changing of the nonconforming use.

The Board of Adjustment made no finding of failure to register. The order of the Board of Adjustment is accorded a presumption of validity, and the burden is on the one attacking such order to prove it invalid or illegal. *Board of Adjustment of the City of Corpus Christi, Texas v. Whitlock,* 442 S.W.2d 437 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.).

§ 42–35(a) of the San Antonio City Code provides for requirements for registration of nonconforming uses and reads as follows:

(a) *Registration.* The owner or owners of the land and/or structure or structures in which nonconforming use is located shall register such nonconforming use by filing with the department of building and planning administration a registration statement for such nonconforming use within three (3) years from the effective date hereof [June 28, 1965].

The only evidence before the Board of Adjustment concerning non-registration was two statements from persons in opposition to the application that the nonconforming uses were not registered. The statements did not disclose from whom or how this information was obtained. There was no evidence from the department of building and planning administration of registration or non-registration. Where records are required to be kept by public officers, it is presumed that they are kept in accordance with the law. Where there is a lack of an entry in the records, it may be inferred that the thing was not done. Tex.Rev.Civ.Stat. Ann. art. 3731a, Sections 5 & 6. We find no error in the trial court, and appellants' evidence is insufficient to establish that the decision of the Board of Adjustment is illegal. *City of Dallas v. Fifley, supra.*

 The appellants contend that the court erred in ruling that substantial evidence existed to support the decision of the Board that there was a continued use of Lot 4 since 1938 for warehousing. Appellants specifically maintain there was no warehousing for a period after 1951 when the building was used for auto body works, in 1963 when the building was bought for the use of a metal fabricating plant, and in 1964 when the building had been used for plastics manufacturing.

Prior to 1965, the Zoning Code of 1950, in § 64–6, provided that a nonconforming use of a building could be changed to another nonconforming use of the same or less restrictive classification.

Appellants have taken the erroneous position that only one nonconforming use was permitted under the Ordinance. We do not agree with this position and need not decide whether warehousing had a continued use on Lot 4 since 1938, for the question was whether warehousing or another nonconforming use of the same or less restrictive classification continued. Appellants presented no evidence but relied entirely upon the transcript of the proceedings before the Board of Adjustment and have failed to establish sufficient evidence of the Board's illegal decision.

Subsequent to 1965 the building was used for warehousing and plastics manufacturing and the evidence before the Board was such that reasonable minds could reach the conclusion of continued use of warehousing.

The judgment of the trial court is affirmed.