# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00377-CV

**John Zamora and PCM Investments, Inc.**
**d/b/a Junior=s Beer & Wine, Appellants**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN000441, HONORABLE PAUL DAVIS, JUDGE PRESIDING

This case involves a writ of *certiorari* in the district court from a decision of the Austin Board of Adjustment interpreting certain Austin zoning regulations. Appellants John Zamora and PCM Investments, Inc., d/b/a Junior=s Beer & Wine, (collectively AJunior=s@) appeal the district court=s summary judgment. *See* Tex. R. Civ. P. 166a(b), (i). The issue for our determination is whether the district court erred by upholding the Board of Adjustment=s zoning decision that Junior=s may not make ice for wholesale distribution in a general commercial services zoning district. We will affirm.

## BACKGROUND

Junior=s is located on property that is currently zoned for general commercial services (hereinafter ACS@) under the City zoning regulations. Junior=s has sold beer, wine, and ice at this location for

approximately twenty years.[1] Appellants and the City agree that the on-site retail sale of beer, wine, and ice from this property is a permitted use in CS zoning. Junior=s sells about 15,000 forty-pound bags of ice per year as part of its retail business. Until 1997, Junior=s also sold between 25,000 and 30,000 bags at off-site locations. In total, Junior=s was producing about 45,000 bags of ice a year. In 1997, Junior=s received a building permit to install a new, larger ice machine on its premises to replace three older and smaller ice machines. Since that installation, eighty percent of the ice Junior=s now manufactures, approximately 65,000 bags, has been distributed wholesale from refrigerated trucks which are often kept, fully stocked and with their refrigerator units running, in the alley between the business and the neighborhood residences. Junior=s ice-making capacity was, at the time suit was brought, approximately 80,000 bags per year.

In 1999, neighbors complained to the City about the impact of increased ice production at Junior=s on the enjoyment of their property. *See* Austin, Tex., Code ' 25-2-2(A) (2001). The complaints included grievances against the new machine=s noise and the traffic and noise disturbances caused by appellants= trucks. In response to such complaints, a city building official is to formally determine the appropriate use classification. *Id.* Janet Gallegher, a City Inspection Services Manager, acting as a city building official, determined that the appropriate use classification for producing ice for off-site distribution was limited industrial services (hereinafter ALI@). On October 2, 1999, the City notified appellants that wholesale distribution of ice at Junior=s was a violation of the City Code.

---

[1] Zamora and PCM Investments, Inc., acquired the property in the early nineteen nineties.

Appellants appealed the City=s determination to the Austin Board of Adjustment (Athe Board@). *See* Austin, Tex., Code ' 25-2-2(C) (2001). Appellants argued that the wholesale distribution of ice could be conducted on the property under an appropriate interpretation of CS zoning. Appellants also argued that the wholesale distribution for off-site use is an Aaccessory use@ to CS zoning and therefore allowed. *See* Austin, Tex., Code ' 25-2-891 (2000). In support of the earlier determination, Gregory Gneusey, a City Principal Planner, submitted a response letter on behalf of the City taking the position that the off-site ice distribution was not an authorized accessory use in a CS zoned district. This argument was based in part on a 1982 determination of this property=s principal use and associated accessory uses, and in part on a earlier determination, involving a different property, that the wholesale distribution requires, at minimum, an LI zoning designation.[2] Appellants responded that this interpretation constituted arbitrary enforcement of the zoning requirements, affecting their property rights, because other businesses located in CS zoned districts in Austin were conducting similar businesses, i.e., wholesale product distribution.

---

[2] Section 25-2-891 defines an Aaccessory use@ as a use that Ais incidental to and customarily associated with a principal use.@ Austin, Tex., Code ' 25-2-891 (2000). In 1982, a Board decision regarding the addition of a cooler on appellants= property determined that its principal use was retail sales of beer and wine. The Board permitted the coolers in that case because they were considered accessory uses to the retail commercial operation of this property since they were used for cooling kegs of beer. The manufacturing and selling of retail ice was also considered an Aaccessory use@ to the primary use of the sale of beer and wine.

3

The Board is responsible for hearing and deciding appeals of a building official's interpretation of the meaning or intent of the zoning regulations, including determinations of the appropriate use classifications of any existing or proposed use or activity.[3] Austin, Tex., Code ' 25-2-475 (2000). After a contested-case hearing, the Board denied the appeal and upheld the City's interpretation of the zoning ordinances prohibiting Junior's wholesale ice distribution operation. The Board determined that, pursuant to the CS zoning designation, Junior's could continue to manufacture and sell ice, but only on-premises. Furthermore, the Board decided that Junior's wholesale distribution of ice off-premises was a violation of the Austin City Code.[4]

Appellants then sought judicial review of the Board's decision. *See* Tex. Loc. Gov=t Code Ann. ' 211.011 (West Supp. 2002). The trial court granted the City's motion for summary judgment and upheld the Board's interpretation. In this appeal, appellants argue that the Board abused its discretion by upholding the City staff's zoning interpretation that Junior's may not make ice for wholesale distribution in a CS zoned district.

**DISCUSSION**

---

[3] The Board is a citizen board established and appointed by the City Council to assist the City in certain land use decisions under the City Code. *See* Austin, Tex., Code ' 2-4-543 (2000).

[4] The issue the Board had to decide was whether the wholesale distribution of ice was a commercial or industrial use under the City's zoning district classifications. Commercial CS zoning serves different purposes than the industrial LI zoning. Although the City code permits Alimited warehouse and distribution@ on property in a CS zoning district, the Board concluded that appellants wholesale distribution of ice did not fall into this Alimited@ category. Instead, the Board agreed with the City's application of the zoning ordinances and determined that the wholesale distribution of ice was an industrial use proper only in an industrial zoning district.

4

The primary issue in this case is whether the Board=s determination was a reasonable interpretation of permitted uses of this property under the City=s zoning district classifications. A City building official determined that ice manufacture with off-site distribution was an industrial use that was impermissible in a CS zoning district. The Board affirmed that interpretation. Appellants propose an alternative interpretation of the CS zoning classification, given the facts of this case.

Appellants contend that the property=s CS zoning classification expressly permits the use of the property for Alimited warehousing and distribution@ under sections 25-2-5(B)(5) and 25-2-491. Austin, Tex., Code '' 25-2-5(B)(5) (1999), 25-2-491 (2001). The wholesaling of ice in a CS zoned district, they argue, is an acceptable accessory use under section 25-2-891. To support this position, appellants produced anecdotal evidence that other distributors of food and beverage products, located in CS zones in Austin, manufacture their products for wholesale distribution.[5] Appellants contend that the Board ignored

---

[5] Appellants= counsel testified at the Board=s hearing that businesses such as the Goodflow Juice Company, Texas French Bread, Amy=s Ice Cream, and Sweetish Hill Bakery were all located in CS zoning districts. He further testified that each of these businesses manufactures a food or beverage product which is sold retail at the site and distributed wholesale from the site. However, we find it significant that the wholesale operation in all of these examples involved products that were the business=s primary use: i.e.,

5

this evidence and "only listened to what the City staff said in furtherance of its position in this politicized situation." Because the evidence could be interpreted in two different ways, appellants argue that the Board abused its discretion by upholding the City=s interpretation of permitted uses in the CS zoned district.

---

production of juice, baked goods, or ice cream.  Junior=s is a *beer and wine* store; *off-site wholesale ice distribution* without any related sale of alcohol is not necessarily even an accessory use of the property. No prior building official determination indicates that the wholesale distribution from any of the other mentioned businesses was determined to be an allowable use of that property.  As the City argues, its zoning controversies are complaint-driven, and the City has received no citizen complaints regarding the anecdotal businesses.  Thus, we are not presented with a situation in which the Board has exercised its authority inconsistently.

Judicial review of the Board=s decisions is governed by section 211.011 of the Texas Local Government Code.[6] Tex. Loc. Gov=t Code Ann. ' 211.011 (West Supp. 2002). The Board is a quasi-judicial body and a district court sits only as a court of review by writ of *certiorari*. Tex. Loc. Gov=t Code Ann. '' 211.009-.011 (West Supp. 2002). Review under section 211.011 Adiffers from the majority of Texas statutes prescribing the procedure for the review of orders of administrative bodies.@ *Board of Adjustment v. Stovall*, 216 S.W.2d 171, 172 (Tex. 1949); *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 69 (Tex. 1945). In a *certiorari* proceeding, the only question that may be raised by the petition is the Aillegality@ of the Board=s decision. Tex. Loc. Gov=t Code Ann. ' 211.011(a); *Boehme Bakery*, 190 S.W.2d at 70. In this quasi-administrative appeal, we review the legality of a board=s decisions to determine whether the district court abused its discretion in affirming the Board. *Pearce v. City of Round Rock,* 78 S.W.3d 642, 646-47 (Tex. App.CAustin 2002, pet. denied).

To establish that an order of the board is illegal, the party attacking the order must present a clear showing that the board abused its discretion. *See Nu-Way Emulsions, Inc. v. City of*

---

[6] The Local Government Code permits a district court to grant a writ of *certiorari* directed to the Board to review its decision. *See* Tex. Loc. Gov=t Code Ann. ' 211.011. *Certiorari* is a procedural mechanism by which a reviewing court can Ademand of an inferior court or body that it send up the record of the proceedings in the matter under review in order that the legality thereof might be tested to determine whether the lower court or body had acted within its proper jurisdiction.@ *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945).

*Dalworthington Gardens*, 617 S.W.2d 188, 189 (Tex. 1981); *Boehme Bakery*, 190 S.W.2d at 70. To find an abuse of discretion, a reviewing court must conclude that the board acted without reference to any guiding rules or principles of law or acts arbitrarily and unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The reviewing court may not put itself in the position of the board thereby substituting its wisdom, judgment, and discretion for that of the board. *Boehme Bakery*, 190 S.W.2d at 70. Instead, it may only ask whether the board correctly analyzed and applied the zoning ordinance. *Pearce,* 78 S.W.3d at 646. As long as some evidence of substantive and probative character exists to support the board=s decision, the board has not abused its discretion. *Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustment*, 980 S.W.2d 802, 805-806 (Tex. App.CFort Worth 1998, no pet.).

In reaching its decision to uphold the City building official=s interpretation, the Board applied its established decision-making process for reviewing and interpreting a City building official=s determinations. The Board had before it evidence of two alternative, acceptable interpretations of the zoning ordinance. On the one hand, the Board had appellants= anecdotal evidence and its reliance on City zoning provisions allowing Alimited warehouse and distribution@ in a CS zoning district. On the other, the Board had the City=s evidence supporting the building official=s interpretation and a prior building official=s determinations regarding other ice companies. The City argued, based on a prior building official=s determination, that appellants= ice wholesaling and distribution exceeded the uses permitted by Alimited warehousing and distribution@ under '25-2-5(B)(5) in a CS zone. The City also presented evidence to the Board that the wholesale distribution of

8

ice from this property was not an accessory use to Junior=s primary business, which is the sale of beer and wine.

Although there was conflicting evidence before the Board, the Board did not abuse its discretion by basing its decision on conflicting evidence. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). The Board chose between two competing interpretations of the CS zoning requirements regarding the permitted use of this property. Unless, in reviewing the record, we conclude that the Board, as fact finder, could have *only* reached a conclusion favoring the appellants, we presume the Board did not abuse its discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992); *Board of Adjustment v. Flores*, 860 S.W.2d 622, 626 (Tex. App.CCorpus Christi 1993, writ denied). We have reviewed the record and hold that the record contains evidence to support the Board=s decision. Therefore we overrule appellants= issue.

## CONCLUSION

Having overruled appellants= issue, we hold that the trial court appropriately granted the City=s motions for summary judgment. Accordingly, we affirm its decision.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

9

Filed:   December 12, 2002

Do Not Publish