TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00377-CV







John Zamora and PCM Investments, Inc. 

d/b/a Junior's Beer & Wine, Appellants


v.


City of Austin, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN000441, HONORABLE PAUL DAVIS, JUDGE PRESIDING






 This case involves a writ of certiorari in the district court from a decision of the
Austin Board of Adjustment interpreting certain Austin zoning regulations. Appellants John Zamora
and PCM Investments, Inc., d/b/a Junior's Beer & Wine, (collectively "Junior's") appeal the district
court's summary judgment. See Tex. R. Civ. P. 166a(b), (i). The issue for our determination is
whether the district court erred by upholding the Board of Adjustment's zoning decision that Junior's
may not make ice for wholesale distribution in a general commercial services zoning district. We
will affirm.


BACKGROUND

 Junior's is located on property that is currently zoned for general commercial services
(hereinafter "CS") under the City zoning regulations. Junior's has sold beer, wine, and ice at this
location for approximately twenty years. (1) Appellants and the City agree that the on-site retail sale
of beer, wine, and ice from this property is a permitted use in CS zoning. Junior's sells about 15,000
forty-pound bags of ice per year as part of its retail business. Until 1997, Junior's also sold between
25,000 and 30,000 bags at off-site locations. In total, Junior's was producing about 45,000 bags of
ice a year. In 1997, Junior's received a building permit to install a new, larger ice machine on its
premises to replace three older and smaller ice machines. Since that installation, eighty percent of
the ice Junior's now manufactures, approximately 65,000 bags, has been distributed wholesale from
refrigerated trucks which are often kept, fully stocked and with their refrigerator units running, in
the alley between the business and the neighborhood residences. Junior's ice-making capacity was,
at the time suit was brought, approximately 80,000 bags per year. 

 In 1999, neighbors complained to the City about the impact of increased ice
production at Junior's on the enjoyment of their property. See Austin, Tex., Code § 25-2-2(A)
(2001). The complaints included grievances against the new machine's noise and the traffic and
noise disturbances caused by appellants' trucks. In response to such complaints, a city building
official is to formally determine the appropriate use classification. Id. Janet Gallegher, a City
Inspection Services Manager, acting as a city building official, determined that the appropriate use
classification for producing ice for off-site distribution was limited industrial services (hereinafter
"LI"). On October 2, 1999, the City notified appellants that wholesale distribution of ice at Junior's
was a violation of the City Code. 

 Appellants appealed the City's determination to the Austin Board of Adjustment 
("the Board"). See Austin, Tex., Code § 25-2-2(C) (2001). Appellants argued that the wholesale
distribution of ice could be conducted on the property under an appropriate interpretation of CS
zoning. Appellants also argued that the wholesale distribution for off-site use is an "accessory use"
to CS zoning and therefore allowed. See Austin, Tex., Code § 25-2-891 (2000). In support of the
earlier determination, Gregory Gneusey, a City Principal Planner, submitted a response letter on
behalf of the City taking the position that the off-site ice distribution was not an authorized accessory
use in a CS zoned district. This argument was based in part on a 1982 determination of this
property's principal use and associated accessory uses, and in part on a earlier determination,
involving a different property, that the wholesale distribution requires, at minimum, an LI zoning
designation. (2) Appellants responded that this interpretation constituted arbitrary enforcement of the
zoning requirements, affecting their property rights, because other businesses located in CS zoned
districts in Austin were conducting similar businesses, i.e., wholesale product distribution. 

 The Board is responsible for hearing and deciding appeals of a building official's
interpretation of the meaning or intent of the zoning regulations, including determinations of the
appropriate use classifications of any existing or proposed use or activity. (3) Austin, Tex., Code § 25-2-475 (2000). After a contested-case hearing, the Board denied the appeal and upheld the City's
interpretation of the zoning ordinances prohibiting Junior's wholesale ice distribution operation. The
Board determined that, pursuant to the CS zoning designation, Junior's could continue to
manufacture and sell ice, but only on-premises. Furthermore, the Board decided that Junior's
wholesale distribution of ice off-premises was a violation of the Austin City Code. (4) 

 Appellants then sought judicial review of the Board's decision. See Tex. Loc. Gov't
Code Ann. § 211.011 (West Supp. 2002). The trial court granted the City's motion for summary
judgment and upheld the Board's interpretation. In this appeal, appellants argue that the Board
abused its discretion by upholding the City staff's zoning interpretation that Junior's may not make
ice for wholesale distribution in a CS zoned district. 


DISCUSSION

 The primary issue in this case is whether the Board's determination was a reasonable
interpretation of permitted uses of this property under the City's zoning district classifications. A
City building official determined that ice manufacture with off-site distribution was an industrial use
that was impermissible in a CS zoning district. The Board affirmed that interpretation. Appellants
propose an alternative interpretation of the CS zoning classification, given the facts of this case. 

 Appellants contend that the property's CS zoning classification expressly permits the
use of the property for "limited warehousing and distribution" under sections 25-2-5(B)(5) and 25-2-491. Austin, Tex., Code §§ 25-2-5(B)(5) (1999), 25-2-491 (2001). The wholesaling of ice in a CS
zoned district, they argue, is an acceptable accessory use under section 25-2-891. To support this
position, appellants produced anecdotal evidence that other distributors of food and beverage
products, located in CS zones in Austin, manufacture their products for wholesale distribution. (5) 
Appellants contend that the Board ignored this evidence and "only listened to what the City staff said
in furtherance of its position in this politicized situation." Because the evidence could be interpreted
in two different ways, appellants argue that the Board abused its discretion by upholding the City's
interpretation of permitted uses in the CS zoned district. 

 Judicial review of the Board's decisions is governed by section 211.011 of the Texas
Local Government Code. (6) Tex. Loc. Gov't Code Ann. § 211.011 (West Supp. 2002). The Board is
a quasi-judicial body and a district court sits only as a court of review by writ of certiorari. Tex. Loc.
Gov't Code Ann. §§ 211.009-.011 (West Supp. 2002). Review under section 211.011 "differs from
the majority of Texas statutes prescribing the procedure for the review of orders of administrative
bodies." Board of Adjustment v. Stovall, 216 S.W.2d 171, 172 (Tex. 1949); City of San Angelo v.
Boehme Bakery, 190 S.W.2d 67, 69 (Tex. 1945). In a certiorari proceeding, the only question that
may be raised by the petition is the "illegality" of the Board's decision. Tex. Loc. Gov't Code Ann.
§ 211.011(a); Boehme Bakery, 190 S.W.2d at 70. In this quasi-administrative appeal, we review the
legality of a board's decisions to determine whether the district court abused its discretion in
affirming the Board. Pearce v. City of Round Rock, 78 S.W.3d 642, 646-47 (Tex. App.--Austin
2002, pet. denied).

 To establish that an order of the board is illegal, the party attacking the order must
present a clear showing that the board abused its discretion. See Nu-Way Emulsions, Inc. v. City of
Dalworthington Gardens, 617 S.W.2d 188, 189 (Tex. 1981); Boehme Bakery, 190 S.W.2d at 70. To
find an abuse of discretion, a reviewing court must conclude that the board acted without reference
to any guiding rules or principles of law or acts arbitrarily and unreasonably. See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The reviewing court may not put
itself in the position of the board thereby substituting its wisdom, judgment, and discretion for that
of the board. Boehme Bakery, 190 S.W.2d at 70. Instead, it may only ask whether the board correctly
analyzed and applied the zoning ordinance. Pearce, 78 S.W.3d at 646. As long as some evidence
of substantive and probative character exists to support the board's decision, the board has not abused
its discretion. Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustment, 980 S.W.2d 802, 805-806
(Tex. App.--Fort Worth 1998, no pet.). 

 In reaching its decision to uphold the City building official's interpretation, the Board
applied its established decision-making process for reviewing and interpreting a City building
official's determinations. The Board had before it evidence of two alternative, acceptable
interpretations of the zoning ordinance. On the one hand, the Board had appellants' anecdotal
evidence and its reliance on City zoning provisions allowing "limited warehouse and distribution"
in a CS zoning district. On the other, the Board had the City's evidence supporting the building
official's interpretation and a prior building official's determinations regarding other ice companies. 
The City argued, based on a prior building official's determination, that appellants' ice wholesaling
and distribution exceeded the uses permitted by "limited warehousing and distribution" under § 25-2-5(B)(5) in a CS zone. The City also presented evidence to the Board that the wholesale distribution
of ice from this property was not an accessory use to Junior's primary business, which is the sale of
beer and wine. 

 Although there was conflicting evidence before the Board, the Board did not abuse its
discretion by basing its decision on conflicting evidence. See Davis v. Huey, 571 S.W.2d 859, 862
(Tex. 1978). The Board chose between two competing interpretations of the CS zoning requirements
regarding the permitted use of this property. Unless, in reviewing the record, we conclude that the
Board, as fact finder, could have only reached a conclusion favoring the appellants, we presume the
Board did not abuse its discretion. See Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); Board
of Adjustment v. Flores, 860 S.W.2d 622, 626 (Tex. App.--Corpus Christi 1993, writ denied). We
have reviewed the record and hold that the record contains evidence to support the Board's decision. 
Therefore we overrule appellants' issue. 


CONCLUSION

 Having overruled appellants' issue, we hold that the trial court appropriately granted
the City's motions for summary judgment. Accordingly, we affirm its decision. 



 __________________________________________

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Puryear

Affirmed

Filed: December 12, 2002

Do Not Publish

1. Zamora and PCM Investments, Inc., acquired the property in the early nineteen nineties.
2. Section 25-2-891 defines an "accessory use" as a use that "is incidental to and customarily
associated with a principal use." Austin, Tex., Code § 25-2-891 (2000). In 1982, a Board decision
regarding the addition of a cooler on appellants' property determined that its principal use was retail
sales of beer and wine. The Board permitted the coolers in that case because they were considered
accessory uses to the retail commercial operation of this property since they were used for cooling
kegs of beer. The manufacturing and selling of retail ice was also considered an "accessory use" to
the primary use of the sale of beer and wine. 
3. The Board is a citizen board established and appointed by the City Council to assist the City
in certain land use decisions under the City Code. See Austin, Tex., Code § 2-4-543 (2000). 
4. The issue the Board had to decide was whether the wholesale distribution of ice was a
commercial or industrial use under the City's zoning district classifications. Commercial CS zoning
serves different purposes than the industrial LI zoning. Although the City code permits "limited
warehouse and distribution"on property in a CS zoning district, the Board concluded that appellants
wholesale distribution of ice did not fall into this "limited" category. Instead, the Board agreed with
the City's application of the zoning ordinances and determined that the wholesale distribution of ice
was an industrial use proper only in an industrial zoning district. 
5. Appellants' counsel testified at the Board's hearing that businesses such as the Goodflow
Juice Company, Texas French Bread, Amy's Ice Cream, and Sweetish Hill Bakery were all located
in CS zoning districts. He further testified that each of these businesses manufactures a food or
beverage product which is sold retail at the site and distributed wholesale from the site. However,
we find it significant that the wholesale operation in all of these examples involved products that
were the business's primary use: i.e., production of juice, baked goods, or ice cream. Junior's is a
beer and wine store; off-site wholesale ice distribution without any related sale of alcohol is not
necessarily even an accessory use of the property. No prior building official determination indicates
that the wholesale distribution from any of the other mentioned businesses was determined to be an
allowable use of that property. As the City argues, its zoning controversies are complaint-driven,
and the City has received no citizen complaints regarding the anecdotal businesses. Thus, we are
not presented with a situation in which the Board has exercised its authority inconsistently.
6. The Local Government Code permits a district court to grant a writ of certiorari directed
to the Board to review its decision. See Tex. Loc. Gov't Code Ann. § 211.011. Certiorari is a
procedural mechanism by which a reviewing court can "demand of an inferior court or body that it
send up the record of the proceedings in the matter under review in order that the legality thereof
might be tested to determine whether the lower court or body had acted within its proper
jurisdiction." City of San Angelo v. Boehme Bakery, 190 S.W.2d 67, 70 (Tex. 1945).