# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00400-CV

**Richard Wallace Pearce and Jesse Ray Blann, Appellants**

**v.**

**City of Round Rock; Round Rock Development Review Board; Frank Del Castillo, in His Capacity as Member of the Round Rock Development Review Board; Terry Hagood, in His Capacity as Member of the Round Rock Development Review Board; Keith Hickman, in His Capacity as Member of the Round Rock Development Review Board; Brian Lott, in His Capacity as Member of the Round Rock Development Review Board; Mark Silla, in His Capacity as Member of the Round Rock Development Review Board; Joseph Vining, in His Capacity as Director of Planning and Community Development, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 97-314-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING

Appellants Richard Wallace Pearce and Jesse Ray Blann appeal the district court's judgment affirming the decisions of the Round Rock Development Review Board[1] to deny appellants' permit applications for seven outdoor advertising structures located in Round Rock's extraterritorial jurisdiction. In five issues, appellants contend that the Board erred in upholding the zoning

---

[1] In the City's municipal structure, "development review board" is the name used to refer to its board of adjustment, which hears appeals of decisions made by the zoning administrator. Although the state statute refers to a board of adjustment and the city ordinance refers to the development review board, the parties agree the entities are the same, and the language of the statute and ordinance are virtually identical. *Compare* Tex. Loc. Gov't Code Ann. § 211.011 (West 1988), *with* Round Rock, Tex., Code of Ordinances § 11.324.

administrator's decisions denying their permits. The issue for our determination is whether the district court abused its discretion in affirming the Board's decisions. We hold that, as a matter of law, four of the structures are "signs" within the meaning of Round Rock's city ordinance, and we reverse and remand to the Board for further proceedings that portion of the district court's judgment and render a determination that the district court erred, as a matter of law, in affirming the Board's decisions relating to those four structures. Because we hold that the other three structures are not "signs," we affirm that part of the district court's judgment affirming the Board.

## BACKGROUND

Appellants obtained permits from the Texas Department of Transportation for the erection of nine outdoor advertising signs within the City's extraterritorial jurisdiction.[2] After construction began, the Round Rock City Council adopted an ordinance extending the City's authority to regulate outdoor advertising into its extraterritorial jurisdiction. The day after adopting the new ordinance, the City's director of planning and community development,[3] Joe Vining, directed his staff to post "stop work" orders on all nine structures, asserting violations of the new ordinance. The City later removed the stop work orders from two structures, concluding they were "signs" and entitled to non-conforming use status under the sign ordinance[4] because they contained advertising

---

[2] Issues concerning two of the nine structures became moot upon termination of appellants' ground leases for the property on which the signs were located. Accordingly, we address only the Board's decisions pertaining to the seven remaining structures.

[3] The office of director of planning and community development is also referred to by the parties as the office of the "zoning administrator."

[4] A non-conforming use of land or buildings is a use that existed legally when the zoning restriction became effective. *University Parks v. Benners*, 485 S.W.2d 773, 777 (Tex. 1972).

2

on one side of the structures' surface. Appellants submitted permit applications for the other seven structures, but Vining denied the permits.

Appellants appealed Vining's decisions to the Board, contending that (i) the signs were non-conforming structures, (ii) the structures were signs, and (iii) they were entitled to "grandfather" use under the ordinance. After a hearing, the Board, acting on a "motion to overturn the decision of the zoning administrator denying" appellants' permits, voted on a separate per-item basis to reverse Vining's decisions. The reversal vote failed, however, because the three-to-two vote in favor of reversal did not meet the supermajority (seventy-five percent) vote required. *See* Round Rock, Tex., Code of Ordinances § 11.324(10). Appellants appealed the Board's decisions to the district court. On remand from this Court,[5] the district court affirmed the Board.

## STANDARD OF REVIEW

Judicial review of the Board's decisions is governed by section 211.011 of the Texas Local Government Code.[6] *See* Tex. Loc. Gov't Code Ann. § 211.011 (West Supp. 2002). Review under section 211.011 "differs from the majority of Texas statutes prescribing the procedure for the

---

[5] The district court initially dismissed appellants' suit for want of jurisdiction; however, this Court determined that jurisdiction was proper and remanded the cause for a determination on the merits. *See Pearce v. City of Round Rock*, 992 S.W.2d 668 (Tex. App.—Austin 1999, pet. denied).

[6] The Local Government Code permits a district court to grant a writ of certiorari directed to the Board to review its decision. *See* Tex. Loc. Gov't Code Ann. § 211.011 (West Supp. 2002). Certiorari is a procedural mechanism by which a reviewing court can "demand of an inferior court or body that it send up the record of the proceedings in the matter under review in order that the legality thereof might be tested to determine whether the lower court or body had acted within its proper jurisdiction." *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945). Because the Board voluntarily forwarded its record to the district court, our review of the Board's decisions is not affected by the fact that appellants did not file a writ of certiorari.

3

review of orders of administrative bodies." *Board of Adjustment v. Stovall*, 216 S.W.2d 171, 172 (Tex. 1949); *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 69 (Tex. 1945). The only question before the district court was the legality of the Board's order. *Boehme Bakery*, 190 S.W.2d at 70. Because the legality of the Board's order is a question of law and the parties do not dispute the central facts, in reviewing its order, the district court does not ask whether there is substantial evidence to support the Board's decision; rather, it asks whether, in making its determination, the Board abused its discretion. *See Nu-Way Emulsions, Inc. v. City of Dalworthington Gardens*, 617 S.W.2d 188, 189 (Tex. 1981); *Boehme Bakery*, 190 S.W.2d at 70. To find an abuse of discretion, a reviewing court must conclude that the Board acted without reference to any guiding rules or principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The Board's decision is presumed to be legal, and a party attacking it bears the burden of establishing that the Board clearly abused its discretion. *See Pick-n-Pull Auto Dismantlers v. Zoning Bd. of Adjustment*, 45 S.W.3d 337, 340 (Tex. App.—Fort Worth 2001, pet. denied).

In determining whether the Board abused its discretion, the reviewing court may not put itself in the position of the Board and substitute its wisdom, judgment, and discretion for that of the Board. *Boehme Bakery*, 190 S.W.2d at 70. "Although this is an appellate review of an agency's action, we do not employ the substantial evidence standard of review in reviewing [decisions] by the Board of Adjustment." *Texans to Save the Capitol v. Board of Adjustment*, 647 S.W.2d 773, 777 (Tex. App.—Austin 1983, writ ref'd n.r.e.). Instead, we ask only whether the Board correctly analyzed and applied the sign ordinance. *See Wende v. Board of Adjustment*, 27 S.W.3d 162, 167 (Tex. App.—San Antonio 2000, pet. granted). Because a board of adjustment has no discretion to determine the law, a failure to correctly analyze or apply the law constitutes an abuse of discretion.

4

*See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Boehme Bakery*, 190 S.W.2d at 70. Thus, in this quasi-administrative appeal, we review the legality of the Board's decisions to determine whether the district court abused its discretion in affirming the Board.

**DISCUSSION**

The central issue on appeal is whether any of appellants' seven structures qualified as non-conforming structures at the time the City passed the sign ordinance. Appellants contend that, because the City unlawfully regulated their outdoor sign usage in its extraterritorial jurisdiction, the Board and the district court erred by not rendering a decision permitting appellants to use their structures as they originally intended.[7] The City responds that, because it lawfully enacted the sign ordinance before appellants completed construction of their signs, all seven of appellants' structures are subject to the ordinance.[8] Therefore, the City asserts, the zoning administrator was within his discretion to deny appellants' requested permits and neither the Board nor the district court erred in upholding those decisions. Before we can properly address these contentions, however, we must first ascertain the effective date of Round Rock's sign ordinance.

---

[7] Appellants assert that denial of their permit requests was improper because (i) they were not required to obtain permits under state law; (ii) the city ordinance upon which the administrator relied in denying their permits was invalid; and (iii) two of the structures did not require permits because they contained advertising and were therefore non-conforming structures.

[8] The City's main argument on appeal is that, because appellants "have not complained of any errors committed by the district court," appellants "have not preserved nor assigned any errors on the part of the district court for this Court to review." So long as appellants' brief sufficiently raises the alleged errors of the district court, those issues are preserved for our review. Because the district court's determination cannot be examined without first considering the Board's decisions, appellants have appropriately preserved review of the district court's determination and the City's contention is without merit.

5

Appellants argue that, because the sign ordinance levies a penalty for non-compliance, it did not become effective until April 10, 1997, when it was read for a second time. The City contends that the ordinance became effective on February 27, 1997, upon its first reading, because, as the ordinance does not levy a fine, the City Counsel could (and did) unanimously vote to dispense with the second reading. Round Rock City Charter section 3.13 provides, in pertinent part:

> Any ordinance which levies a fine or penalty and those dealing with budget and/or tax, franchises, public utilities or the setting of their rates, shall be read at two regular meetings followed by publication in full or by caption in two successive issues of the official newspaper of the City before the same shall become effective.
>
> All other ordinances shall not be finally passed until they have been read on two separate days not less than twelve (12) hours apart; provided however if an ordinance has been introduced at a regular meeting of the City Council, the requirements for reading on two separate days may be dispensed with by an affirmative vote of all the City Council members present.

Round Rock, Tex., Charter § 3.13 (1996). The sign ordinance provides:

> It shall be unlawful for any person to erect, relocate, repair, repaint or materially alter any Sign, as defined herein, within the city's limits or extraterritorial jurisdiction, without first obtaining a building permit issued by the Chief Building Official or his designee, as directed in Section 3.106 of this Code.

Round Rock, Tex., Code of Ordinance § 3.1403(6)(a). Section 3.106(3) sets forth a fee schedule for anyone "who desires to . . . erect, or construct a sign of any description." *Id.* § 3.106(3). Failure to obtain a permit prior to beginning construction doubles the fee schedule. *Id.* § 3.106(6). Despite the fee doubling feature contained in section 3.106(6), section 3.1403(6)(a) itself does not levy a penalty or fine. Accordingly, we reject appellants' claim that, because violating the sign ordinance can result in an assessment that doubles the fee schedule under the general ordinance, the sign ordinance

6

contains a penalty or fine. We hold that, because section 1.403(6)(a) does not by its language levy a fine or penalty, the Board's unanimous vote to dispense with the second reading was valid and the ordinance became effective February 27, 1997. Accordingly, we overrule appellants' first,[9] second,[10] and third issues.

Having determined the effective date of the ordinance, we must now determine whether appellants' seven structures were "signs" and entitled to non-conforming use status. Appellants take the position that, because they completed all seven structures prior to enactment of the ordinance and were awaiting only the application of advertising messages to the structures, the City lacks authority to regulate the structures under the new ordinance. The City does not dispute that signs completed prior to February 27, 1997 would be entitled to non-conforming use status and exempt from complying with the permit requirement.[11] Instead, it contends that none of appellees'

---

[9]    In their first issue, appellants claim that their construction of the seven structures at issue constitutes a "set of projects" and that, under former Texas Government Code chapter 481, the City was precluded from imposing the requirements of its new sign ordinance and instead was required to consider only the ordinances in effect at the time appellants received their original permits from the Texas Department of Transportation. Because appellants' billboard construction was not a "set of projects" as they contend, former Government Code chapter 481 has no application in this appeal. Therefore, as of its effective date, appellants were required to comply with the City's sign ordinance.

[10]    Appellants' second issue challenges the Board's decision under current Government Code sections 216.003(b) and 216.004(a). The crux of appellants' argument is that, because "Round Rock has not created a municipal board on sign control[,] its sign ordinance must therefore be construed not to require the relocation, reconstruction, or removal of existing signs (as defined by state law) which are in lawful existence when the ordinance become effective." Because three of appellants' structures lacked the backing on which to apply text or symbols, as of the effective date of the sign ordinance, as discussed *infra*, they were not signs, even under the state law definition; therefore, Government Code sections 216.003(b) and 216.004(a) are inapplicable and appellants were required to comply with the City's sign ordinance as of its effective date.

[11]    In two separate letters to appellants regarding the two signs not at issue in this appeal, Vining advised appellants that, because the structures "met the City Code's definition of a sign" on "the date of the adoption of the [city ordinance]," appellants were "entitled to continue to . . . use[] and occup[y each structure] as a non-conforming sign."

7

structures were, by definition, signs. Two structures contained writing: one displayed "for lease," one displayed "for sale," and both displayed appellants' phone number. In letters denying appellants' requested permits for those two structures, Vining stated that, because neither structure was complete or "being used and occupied as a 'sign' as defined in the City Code," neither structure was entitled to non-conforming status. Explaining this conclusion further, Vining advised appellants that "the mere fact that you have placed a telephone number on the structure does not bring it within the definition of a 'sign' . . . ."

"Sign" is defined as "[a]ny device or surface on which letters, numbers, illustrations, designs, figures, or other symbols are painted, printed, stamped, raised, projected or in any manner outlined or attached and is used for the purposes of advertisement, announcement, declaration, demonstration, display, identification or expression." Round Rock, Tex., Code of Ordinance § 3.1403(1)(m).[12] When construing statutes, the plain meaning of words is to be given effect whenever practicable. *See* Tex. Gov't Code Ann. § 311.021(2) (West 1998); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479 (Tex. 2001) ("A basic rule of statutory construction is that we enforce the plain meaning of an unambiguous statute."). Here, neither party argues the ordinance is ambiguous. Thus, we give the ordinance its plain meaning, presuming that every word in the ordinance is used for a purpose and giving effect to each sentence, clause, and word if reasonable and possible. *See Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000).

---

[12] Under a prior version of the Code of Ordinances, the City defined sign as "[a]ny device or surface on which letters, illustrations, figures, or symbols are painted, printed, stamped, raised, projected or in any manner outlined or attached *and used for advertising*." Round Rock, Tex., Code of Ordinance § 3.2 (1961) (emphasis added). However, the 1995 edition of the Code of Ordinances reflects subsequent revisions to this older definition of "sign" and omits any reference to the "advertising" requirement.

To be a sign under the City's ordinance, a structure must be a *device or surface* "on which letters, numbers, illustrations, designs, figures, or other symbols are painted, printed, stamped, raised, projected or in any manner outlined or attached . . . ." In the context of this appeal, then, the definition of sign contains no requirement that appellants' structure must currently display any writing, only that, at the time the City enacted the ordinance, it have a surface "on which letters, numbers, illustrations . . ." were capable of being displayed. We hold that the Board erred, as a matter of law, in not rejecting Vining's interpretation that, in order to be signs, the structures must contain third-party advertising. The ordinance simply contains no such requirement. The Board also erred in affirming Vining's decisions as to each of appellants' structures that were "surfaces" for such advertisements on February 27, 1997. Because four of appellants' structures contained backing (a "surface") capable of displaying text or symbols, and were in all respects the same as appellants' two structures that the City determined to be signs—the only distinction being that advertising was yet to be affixed to these four structures—we hold that they were signs and therefore entitled to non-conforming use.[13] We hold that the district court abused its discretion in affirming the Board's decision to the contrary. We sustain appellants' fourth issue. As to the remaining three structures at issue, we hold that, because they lack a backing (surface) on which to attach text or symbols, they are not currently capable of displaying text or symbols and are accordingly not signs; we affirm the district court's decision with respect to those structures.

By appellants' fifth issue, they contend that, to the extent they are prohibited from using the structures as signs, the sign ordinance constitutes an unlawful taking. The City may enact

---

[13] The four structures that were signs are identified in the stipulated administrative record as plaintiff's exhibits 16/17, 18/19, 22/23, and 24/25.

9

reasonable regulations to promote the health, safety, and general welfare of its people. *See Ellis v. City of W. Univ. Place*, 175 S.W.2d 396, 397 (Tex. 1943). In order for an ordinance to be a valid exercise of the City's police power, the regulation must be adopted to accomplish a legitimate goal, that is, it must be "substantially related" to the health, safety, or general welfare of the people. *Waxahachie v. Watkins*, 275 S.W.2d 477, 481 (Tex. 1955); *Lombardo v. Dallas*, 73 S.W.2d 475, 479 (Tex. 1934). A presumption exists that favors the reasonableness and validity of the ordinance, and an "extraordinary burden" rests on one attacking it. *Hunt v. San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971). A broad range of governmental purposes will satisfy this requirement, including protecting residents from the ill effects of urbanization. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 934 (Tex. 1998) (citing *Agins v. City of Tiburon*, 447 U.S. 255, 261 (1980)); *see also Berman v. Parker*, 348 U.S. 26, 33 (1954). As long as reasonable minds may differ about whether a particular zoning ordinance bears a substantial relationship to the public health, safety, morals, or general welfare, then the ordinance is a valid exercise of the City's policy power. *See Hunt*, 462 S.W.2d at 539. Appellants do not contest the City's power to enact the sign ordinance. Instead, they argue that, to the extent the ordinance prohibits them from using the structures as they intended, it interferes with their investment-backed expectations and constitutes a taking. This contention fails to satisfy appellants' burden to rebut the presumptive constitutionality of the ordinance. Accordingly, we hold the City's regulation of billboards in its extraterritorial jurisdiction passes constitutional muster.

Our conclusion that the ordinance is constitutional does not, however, end our takings inquiry. A compensable regulatory taking occurs if governmental restrictions deny landowners of all economically viable use of their property or unreasonably interfere with their right to use and enjoy

10

the same. *Mayhew*, 964 S.W.2d at 935. Here, appellants claim only that the ordinance interferes with their right to use and enjoy their property.

In determining whether the City has unreasonably interfered with a landowner's right to use and enjoy its property, we consider (i) the economic impact of the regulation on the landowner and (ii) the extent to which the regulation interferes with the landowner's investment-backed expectations. *Id.* The first factor compares the economic value taken from the property with that which remains, without consideration of anticipated gains or profits. *Id.* at 936. The second factor requires consideration of the existing and permitted uses of the property affected by the regulation, taking into account the landowner's knowledge of existing zoning restrictions. *Id.* Evidence of the landowner's development plans and market analysis, including projected profits, may be relevant in determining whether the regulation interferes with the landowner's investment-backed expectations, even though it is not relevant in determining the amount of compensation due. *City of Glenn Heights v. Sheffield Dev. Co.*, 61 S.W.3d 634, 651 (Tex. App.—Waco 2001, pet. denied). Because the record is void of any evidence enabling us to assess the economic impact of the City's ordinance, we hold that appellants have not met their burden to support their takings claim. Accordingly, we overrule their fifth issue.

**CONCLUSION**

In failing to reverse Vining's decisions denying appellants' permits, the Board accepted Vining's interpretation of the ordinance and required the presence of third-party advertising on a structure in order for it to comply with the City ordinance's definition of sign. We conclude that the judgment of the district court upholding the Board's decisions on that ground must be reversed.

11

Because a sign need only be a "device or surface on which letters, numbers, illustrations . . ." can be "printed, stamped, raised . . ." we hold that (i) four of appellants' structures were signs and therefore entitled to non-conforming use status under the City's ordinance and (ii) the remaining three structures were not signs and were correctly denied non-conforming use status. Accordingly, we reverse and remand to the Board its decisions relating to those four structures for further proceedings consistent with this opinion. In all other respects, we affirm the district court's judgment upholding the Board's decisions.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: April 11, 2002

Publish

12