THE CITY OF SOUTHLAKE, TEXAS V. HANSON AGGREGATE CENTRAL, INC.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-125-CV

THE CITY OF SOUTHLAKE, TEXAS APPELLANT

V.

HANSON AGGREGATE CENTRAL, INC. APPELLEE

------------

FROM THE 342
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

Appellant, the City of Southlake, appeals the district court’s granting of summary judgment raising three points.  Appellant claims that: 1)
 the district court erred in granting Appellee’s application for writ of certiorari and entering judgment reversing the Southlake Board of Adjustment’s (Board) ruling; 2) the Southlake zoning ordinance does not require that the owner intended to abandon a legal nonconforming use in order to create a lapse of legal nonconforming status; and 3) Appellee’s cessation of use of the concrete batching plant in question for more than six months was not excused by legal necessity.

FACTS

Appellee, Hanson Aggregate Central, Inc., owns and operates concrete batch plants.  Appellee owned a plant located in the city of Southlake. According to Appellant, the plant was never in conformity with city ordinances, and Appellant had allowed it to operate as a nonconforming facility.  During 1999, Appellee’s air emissions permit expired, and Appellee voluntarily ceased operations in the plant upon the request of the State agency in charge of issuing the air emissions permit.  While the plant was closed, Appellee attempted to obtain a new permit.  At this point, the plant had not operated in eighteen months.  Once the plant received its new permit and was reopening, Appellant ordered Appellee to stop production claiming that the plant had abandoned its nonconforming status and could not legally operate. 

Appellee filed an original lawsuit with the district court.  Appellant filed a plea to the jurisdiction claiming that Appellee had failed to exhaust its administrative remedies.  Appellee agreed to stay the district court action and go through administrative proceedings.  In those proceedings, the Southlake Zoning Board of Adjustment upheld Appellant’s decision to shut down the operations of the plant.  Appellee filed a writ of certiorari with the 342
nd
 District Court of Tarrant County, which consolidated the appeal with Appellee’s original lawsuit.  

The district court granted a partial summary judgment motion filed by Appellee, holding that Appellee had not abandoned operations at the plant and, therefore, could continue its nonconforming status.  The court then held a hearing on the issue of attorney’s fees. 
 The trial court awarded Appellee attorney’s fees in the amount of $44,332.62 and, incorporating the rulings made in the partial summary judgment, entered a final judgment in the case. 

STANDARD OF REVIEW

A board of adjustment is a quasi-judicial body.  
Bd. of Adjustment v. Flores
, 860 S.W.2d 622, 625 (Tex. App.—Corpus Christi 1993, writ denied).  The district court may review the legality of a board’s decision by writ of certiorari.  
See
 T
EX
. L
OC
. G
OV’T
 C
ODE
 A
NN
. § 211.011 (Vernon 2003).  The only question before the district court is the legality of the board’s order, which is a question of law.  
Pearce v. City of Round Rock
, 78 S.W.3d 642, 646 (Tex. App.—Austin 2002, pet. denied).  In reviewing a board’s order, the district court does not ask whether there is substantial evidence to support the board’s decision; rather, it asks whether, in making its determination, the board abused its discretion.
  Id.
;
 Nu-Way Emulsions, Inc. v. City of Dalworthington Gardens
, 617 S.W.2d 188, 189 (Tex. 1981).  The abuse of discretion analysis requires a reviewing court to consider whether the questions presented pertain to factual, legal, or mixed issues.  
See Flores, 860 S.W.2d at 626.
  As a quasi-judicial body, a board of adjustment has no discretion in determining what the law is or in applying the law to the facts.  
See Walker v. Packer
, 827 S.W.2d 833, 840 (Tex. 1992).  In other words, a clear failure to analyze or apply the law correctly is an abuse of discretion. 
 Id.
  

DISCUSSION

In Appellant’s first two points, it claims that the district court erred in granting Appellee’s application for writ of certiorari and entering judgment reversing the Board’s ruling.  Appellant’s argument focuses on the meaning of Appellant’s ordinance regarding the nonconforming use of property in the city.  Appellant alleges that Appellee lost its nonconforming status due to abandonment or discontinuance of the concrete batching plant.  Appellant further argues that once the nonconforming use status ceased, any future use of the property had to be in conformity with the applicable zoning ordinances.  
See McDonald v. Bd. of Adjustment
, 561 S.W.2d 218, 222 (Tex. App.—San Antonio 1977, no writ).

Appellant alleges that Appellee lost its nonconforming status through its inaction at the site for over a year.  Appellant relies on Southlake ordinance 6.9, which states that:

a.  A nonconforming use, when discontinued or abandoned, shall not be resumed and any further use shall be in conformity with the provisions of this ordinance.  Discontinuance or abandonment shall be defined as follows. 

When land used for a nonconforming [sic] use shall cease to be used in a bona fide manner for the nonconforming use for six (6) consecutive months or for a total of eighteen (18) months during any three (3) year period.

b.  Discontinuance or abandonment shall be conclusively deemed to have occurred irrespective of the intent of the property owner if the nonconforming use was dilapidated, substandard, or was not maintained in a suitable condition for occupancy during the above time periods.

Southlake, TX., Ordinance 480 § 6.9 (Sept. 5, 1989).  Appellant points to subsection 6.9(a) as authorizing its actions.  Appellant contends that under subsection 6.9(a), Appellee failed to continue its nonconforming use for well over the six-month period required and that this inaction resulted in the automatic loss of nonconforming status.  

Appellee responded in the district court by stating that it never intended to cease operations in the plant, and because intent is a necessary element of abandonment or discontinuance under a city ordinance, it never lost its nonconforming status.  Appellant concedes that there is no evidence to prove that Appellee intended to abandon or discontinue the nonconforming use of the property.  Appellant also concedes that all Texas cases that have ruled on the issue have held that intent is implied in the definition of abandonment.
(footnote: 2)  Appellant states that the case law which covers this question is based on cases where abandonment and discontinuance were not defined in the ordinance.  

In this case, the ordinance provides a definition.  Appellant claims that this means that the case law does not apply.  We agree.  The Texas Supreme Court has held that “[a]s a starting point, we construe statutes as written and, if possible, ascertain intent from the statutory language.” 
Marcus Cable Assoc., L.P. v. Krohn
, 90 S.W.3d 697, 706 (Tex. 2002); 
see also Sec. Nat’l Ins. Co. v. Farmer
, 89 S.W.3d 197, 201 (Tex. App.—Fort Worth 2002, no pet.) (“If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state.”).  We apply the same rules when construing an ordinance as we do when we construe a statute.  
Bd. of Adjustment of City of San Antonio v. Wende
, 92 S.W.3d 424, 430 (Tex. 2002).  Generally, we accept the words used according to their ordinary meaning unless given a specific statutory definition.  
Cities of Austin, Dallas, Fort Worth and Hereford v. S.W. Bell Tel. Co.
, 92 S.W.3d 434, 442 (Tex. 2002).  In this case, we hold that the definition of abandonment and discontinuance can be ascertained from the language of the ordinance, and so the district court should not have resorted to case law for a definition.  
See Farmer
, 89 S.W.3d at 201.  We must now determine if intent was included in the definition of the ordinance.

We hold that in this case, the ordinance uses abandonment and discontinuance interchangeably, so that one definition exists for the two words.  Further, the ordinance provides its own stated definition of what abandonment and discontinuance means.  Under section 6.9(a)(1), it states that nonconforming use status lapses “[w]hen land used for a nonconforming (sic) use shall cease to be used in a bona fide manner for the nonconforming use for six (6) consecutive months or for a total of eighteen (18) months during any three (3) year period.”  An intent requirement is not mentioned in subsection 6.9(a).  If we were to stop our analysis here, we would hold that there is no intent requirement in the ordinance, but the Texas Supreme Court has held that we should not interpret an individual subsection of an ordinance in isolation from the rest of the ordinance.  
See S.W. Bell
, 92 S.W.3d at 442
 
(stating that a court must attempt to avoid construing an ordinance provision in isolation from the rest of the ordinance).
 
 This means that we must consider the ordinance as a whole, and not just a single phrase, clause, or sentence. 
Id
.
; 
Morrison v. Chan
, 699 S.W.2d 205, 208 (Tex. 1985).

When we read subsection 6.9(a) in conjunction with subsection 6.9(b), we see that Appellant intended to include intent in the definition of abandonment and discontinuance.  Subsection 6.9(b) states that discontinuance or abandonment is “conclusively deemed to have occurred 
irrespective of the intent
” if the property is in disrepair.  (Emphasis added)  This subsection specifically excludes intent in situations where the property is in disrepair and the nonconforming use has ceased for the required period of time.  Therefore, subsection 6.9(a) does not exclude intent.  We presume that the legislative body intended to word the ordinance in the manner it did.  
See Cameron v. Terrell & Garrett, Inc.
, 618 S.W.2d 535, 540 (Tex. 1981) (stating that we must presume that the city used every word of the ordinance for a purpose).  If Appellant intended to exclude intent in 6.9(a), it could have used the same wording as subsection 6.9(b) did.  Further, if subsection 6.9(a) already excluded intent as an element, then it would not be necessary to specifically exclude intent in subsection 6.9(b).  We hold that the only reasonable interpretation of Southlake’s ordinance is that intent was included in subsection 6.9(a).  
See Fireman’s Fund County Mut. Ins. Co. v. Hidi
, 13 S.W.3d 767, 769 (Tex. 2000) (“When the Legislature has employed a term in one section of a statute and excluded it in another, we presume that the Legislature had a reason for excluding it.”).  

Because Appellant conceded that Appellee never intended to abandon or discontinue its nonconforming use, Appellee did not lose its nonconforming use status.  The Board ruled that Appellee lost its nonconforming status through its inactivity at the property.  Because the Board’s ruling is in conflict with the proper definition of the ordinance, the Board abused its discretion, and the district court did not commit error by reversing its ruling.  
See Walker
, 827 S.W.2d at 840.  We overrule Appellant’s first and second points on appeal and hold that the district court did not commit error.

Because our ruling on Appellant’s first two points is decisive, we do not address Appellant’s final point on appeal.  
See
 T
EX
. R. A
PP
. P. 47.1.

CONCLUSION

Having held that the district court did not err in overturning the Board’s decision, we affirm the district court’s judgment.

SAM J. DAY 

JUSTICE

PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

DELIVERED:  April 24, 2003

FOOTNOTES
1:
See
 T
EX
. R. A
PP
. P. 47.4.

2:
See Turcuit v. City of Galveston
, 658 S.W.2d 832, 834 (Tex. App.—Houston [1st
 Dist.] 1983, no writ.)
;  McDonald
, 561 S.W.2d at 222; 
Rosenthal v. City of Dallas
, 211 S.W.2d 279, 284 (Tex. Civ. App.—Dallas 1948, writ ref’d n.r.e.)
.