ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 16, 2014

The Honorable René O. Oliveira
Chair, Committee on Business & Industry
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-1066

Re: Whether a Type B economic development corporation may use sales tax funds to hire an independent contractor for the purpose of developing a comprehensive plan for future development of the city  (RQ-1174-GA)

Dear Representative Oliveira:

You ask whether a Type B economic development corporation may use sales tax funds to hire an independent contractor for the purpose of developing a comprehensive plan for the future development of a city.[1]  You explain that the envisioned comprehensive plan would be "a long-range development tool for the municipality that would include provisions on land use, economic development, transportation, and public facilities, in accordance with section 213.002 of the Local Government Code."  Request Letter at 2; *see* TEX. LOC. GOV'T CODE ANN. §§ 213.001–.005 (West 2008) (providing for municipal comprehensive plans).  You indicate that the "comprehensive plan would be used by the corporation and the city to coordinate and guide them in the selection and establishment of development regulations and economic development projects and in making decisions about growth and development."  Request Letter at 2; *see Bd. of Adjustment of City of San Antonio v. Leon*, 621 S.W.2d 431, 436 (Tex. Civ. App.—San Antonio 1981, no writ) (describing comprehensive plan as one "designed to control and direct the use and development of property in the municipality").  You state that the city's administration requested that the economic development corporation fund the cost of hiring an independent contractor to prepare and produce this comprehensive plan.  Request Letter at 2.  You ask for an opinion "regarding whether this expense is a qualified project that the . . . [e]conomic [d]evelopment [c]orporation may fund from its available 4B sales tax revenues."  *Id.*  The question of whether a particular expenditure is authorized by the statute is one that involves fact issues and cannot be resolved by an attorney general opinion.  *See* Tex. Att'y Gen. Op. No. GA-1050 (2014) at 2.

---

[1]*See* Letter from Honorable René O. Oliveira, Chair, House Comm. on Bus. & Indus., to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Dec. 20, 2013), http://www.texasattorneygeneral.gov/opin ("Request Letter").

Instead, it is a matter in the first instance for the corporation's board of directors. *See id.* Assuming the proposed expenditure otherwise complies with the other statutory requirements, we advise you generally on the use of Type B sales tax proceeds.[2]

Formerly known as a Type 4B economic development corporation due to initial authorization in article 5190.6 section 4B of the Revised Civil Statutes, a Type B economic development corporation is now primarily governed by chapter 505 of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 505.001–.355 (West Supp. 2013) (governing Type B corporations), *id.* § 501.002(16) (defining Type B corporations as those governed by chapter 505). Under section 505.302, a Type B corporation may use its economic development sales and use tax proceeds to pay the costs of authorized projects. *Id.* § 505.302(1); *see id.* § 501.152 (pertaining to "costs" associated with projects). The different types of authorized projects are enumerated in chapters 505 and 501. *See id.* §§ 505.151 (defining project to include the definition of project in chapter 501), 501.002(13) (defining "project" by reference to subchapter C, chapter 501); *see also id.* §§ 505.151–.161 (subchapter D, chapter 505, identifying authorized projects); §§ 501.101–.108 (subchapter C, chapter 501, identifying authorized projects).

Generally, chapters 501 and 505 define projects in terms of "land, buildings, equipment, facilities, . . . targeted infrastructure, and improvements." *See id.* § 501.101; *see also id.* § 505.151 (referring to "land, buildings, equipment, facilities, . . . and improvements"). An expenditure for the service of preparing a comprehensive plan is not a direct expenditure for land, buildings, equipment, facilities, targeted infrastructure and improvements and thus may not constitute a project as contemplated by these definitions. However, a few provisions in chapters 501 and 505 expressly identify a project to include an "expenditure." *Id.* §§ 501.101, .103, .104, .105, 505.157(b), .158(a)–(b). Most of these provisions involve an expenditure for projects with a specific focus not relevant in the context of the preparation of a comprehensive development plan or not applicable to the city at issue. *See id.* §§ 501.104 ("Projects Related to Certain Military Bases or Missions"); 501.105 ("Career Center Projects Outside of Junior College District"); 505.157 ("Projects Related to Business Enterprises in Landlocked Communities"); 505.158 ("Projects Related to Business Development in Certain Small Municipalities").

Two provisions, sections 501.101 and 501.103, potentially apply to the expenditure about which you ask. Under section 501.101, a project includes an expenditure that satisfies two requirements. The first is that the expenditure must be "for the creation or retention of primary jobs."[3] *Id.* § 501.101(1). The second is that the expenditure must be found by the economic

---

[2]The authority of a development corporation may be limited by any resolution creating the corporation or any ballot language restricting the use of Type B tax proceeds. *See* TEX. LOC. GOV'T CODE ANN. §§ 505.251 (West Supp. 2013) (providing for election to create development corporation), 505.160 (pertaining to election required for particular project).

[3]"Primary jobs" is defined in section 501.002(12) and refers to a job included in the "North American Industry Classification System (NAICS)." TEX. LOC. GOV'T CODE ANN. § 501.002(12)(A)(ii) (West Supp. 2013).

development corporation's board "to be required or suitable for the development, retention, or expansion of" a list of twelve types of centers and facilities. *Id.* § 501.101(2) (identifying manufacturing and industrial facilities, research and development facilities, military facilities, transportation facilities, disposal, recycling and pollution facilities, distribution, warehouse, job training facilities, and corporate headquarters facilities). A municipal comprehensive plan could impact a municipality's economy, but to qualify as an authorized project it must directly relate to the creation or retention of primary jobs as measured by the standards in section 501.101(1)–(2).

Section 501.103 relates to expenditures that are "found by the board of directors to be required or suitable for infrastructure necessary to promote or develop new or expanded business enterprises, limited to: (1) streets and roads, rail spurs, water and sewer utilities, electric utilities, or gas utilities, drainage, site improvements; and . . . ; (2) telecommunications and Internet improvements . . . ." *Id.* § 501.103. The limiting language in section 501.103 indicates this is an exclusive list. *See Peterson v. Calvert*, 473 S.W.2d 314, 317 (Tex. Civ. App.—Austin 1971, writ ref'd) ("The specification of one particular class excludes all other classes."); *cf. Pro Path Servs., L.L.P. v. Koch*, 192 S.W.3d 667, 670–71 (Tex. App.—Dallas 2006, pet. denied) (discussing noninclusive nature of statutory language "including"). An expenditure for a comprehensive plan that does not fall precisely within the contours of section 501.103 is not an authorized project under that section.

As noted previously, the question of whether a particular expenditure is authorized by the statute is one that we cannot resolve. *See supra* page 1. Here, it is particularly appropriate for this office to refrain from providing a definitive answer given the fact that potentially relevant statutes require specific findings from the economic development corporation's board. *See* TEX. LOC. GOV'T CODE ANN. §§ 501.101(2), .103(1)–(2) (West Supp. 2013). In the event the corporation's board makes the required findings, any judicial review would utilize an abuse of discretion standard. *Cf. Pearce v. City of Round Rock*, 78 S.W.3d 642, 646–47 (Tex. App.—Austin 2002, pet. denied) (utilizing abuse of discretion standard to review decision of city's development review board).

## S U M M A R Y

To the extent an expenditure of Type B sales tax proceeds for the services involved in the preparation of a municipal comprehensive plan by an independent contractor is within the scope of sections 501.101 or 501.103 of the Local Government Code, it may be an authorized project under the statute. It is, however, for the board of directors of the economic development corporation to determine, in the first instance and subject to judicial review, whether an expenditure is authorized under the statute.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee